UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO YOEL NUNEZ SANCHEZ | No. 1:26-cv-04368-DJC-CKD |
| Petitioner, | |
| v. | RELEASE ORDER |
| WARDEN, CENTRAL VALLEY ANNEX DETENTION FACILITY | A# 099-575-236 |
| Respondent. | |

Petitioner Eduardo Yoel Nunez Sanchez is a noncitizen detainee proceeding under an Amended Petition for Writ of Habeas Corpus.  (Supp. Br. (ECF No. 9).)  Since Petitioner has satisfied his burden in showing that his removal is not foreseeable and the Government has not rebutted this showing, the Court grants the Petition and orders release.

**BACKGROUND**

Petitioner, a noncitizen originally from Cuba, is presently in the custody of Immigration and Customs Enforcement ("ICE").  (Suppl. Br. at 2–4.)  Petitioner entered the United States in 2006, when he was 18 years old.  (*Id.* at 2.)  Upon entry, he was arrested by Border Patrol and released.  (*Id.*)  Petitioner lived in Florida for twenty years, over the course of which he had a variety of criminal contact, including a battery

1

conviction stemming from a 2025 altercation with his mother's then-partner.  (*Id.* at 2–3; Opp'n Ex. 3 (ECF No. 5-3); Opp'n Ex. 4 (ECF No. 5-4).)  On December 4, 2025, while serving his 364-day sentence for this conviction, he was taken into ICE custody in Florida.  (Suppl. Br. at 3.)  On January 9, 2026, Petitioner received a final order of removal from an Immigration Judge and waived his appeal, rendering the removal order final.  (Opp'n Ex. 1 (ECF 5-1) at 3–4.)  On February 18, 2026, Petitioner received notice that authorities intended to remove him to Mexico.  (Suppl. Br. at 4; Opp'n Ex. 2 (ECF No. 5-2).)  In May 2026, he was transferred from Florida to ICE custody in California.  (Suppl. Br. at 3.)  He has been in immigration custody for close to eight months, including over six months after the issuance of the final removal order.

Petitioner first filed pro se and was appointed counsel.  (Pet. (ECF 1); Minute Order (ECF 6).)  The briefing on this matter is now complete.  (Opp'n (ECF 5); Suppl. Pet.; Resp. (ECF 11); Reply (ECF 12).)

**DISCUSSION**

Petitioner is detained under 8 U.S.C. § 1231(a)(6), a "special statute [that] authorizes further detention if the Government fails to remove the alien during those 90 days."  (Opp'n at 2); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).  However, the statute allows detention only for "a period *reasonably necessary* to bring about that [noncitizen]'s removal from the United States."  *Id*. at 689.  "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Zadvydas*, 533 U.S. at 699.  The presumptive ceiling for this detention is six months, after which, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id*. at 701; *see also Jennings v. Rodriguez*, 583 U.S. 281, 298–99 (2018).

Petitioner was issued a removal order on January 9, 2026, while in ICE detention, and waived his appeal.  (Opp'n at 2; *Id.* Ex. 1.)  Therefore, Petitioner has been detained for over six months following a final removal order.  Petitioner has

passed the *Zadvydas* threshold of the reasonably presumptive period necessary to effectuate his removal; once he "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 689.

Petitioner argues that the Government is not attempting to effectuate his removal to Cuba, and Respondents have not asserted otherwise. (Suppl. Br. at 5.) As for removal to Mexico, Petitioner contends that removable is not likely in the foreseeable future as Respondents have offered "nothing beyond the Notice of Removal issued four months ago" and have no "tangible" plans for removal. (*Id*.) Petitioner has met his initial burden. "Standing alone, the fact that removals to a particular country are in fact occurring, says nothing about whether Mexico will accept [Petitioner] any time soon." *Arenado-Borges v. Bondi*, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025). Petitioner's lack of compliance "casts further doubt" on the Respondent's ability to effectuate his third-country removal to Mexico. *Id.* Indeed, district courts have repeatedly found that similarly situated petitioners – Cuban nationals whom the Government is attempting to remove to Mexico against their will – have met their initial burden, especially because the current standing agreement with Mexico appears to be conditioned on the consent of the noncitizen. *See, e.g. Arenado-Borges*, 2025 WL 3687518, at *4 (holding that Petitioner met his "initial burden" were there was no meaningful dispute that removal to Cuba is likely where the Government makes only unsubstantiated assertions that it will remove Petitioner to Mexico) (internal quotation and citation omitted); *Olea Sanchez v. Bondi,* No. 1:25-cv-00253-KKE, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026) (holding that Petitioner met his initial burden where he showed no progress was made towards obtaining travel documents to Cuba or Mexico and "provide[d] evidence" that "Mexico's acceptance [of him] may be contingent on [his] consent, which he is unwilling to provide") (internal quotation and citation omitted).

3

Respondents "submit[] that Petitioner's removal to Mexico is reasonably foreseeable" since "Petitioner was served notice that the government intends to remove him to Mexico, and there is evidence that Mexico accepts removal of Cuban nationals." (Opp'n at 2.) Respondents ask the Court to take judicial notice that Mexico has a "standing agreement with the United States to accept Cuban Nationals, [resulting in] over 6,000 successful removals of Cuban Nationals in fiscal years 2025 and 2026." (*Id*. at 1–2 (internal quotation omitted).) However, as Respondents acknowledge, district courts have rejected the argument that the bare existence of a standing agreement between the United States and Mexico is sufficient to rebut Respondent's initial showing that removal is not reasonably foreseeable, especially without Petitioner's consent. (Resp. at 2.) *Rodriguez-Fernandez v. Bondi*, No. 2:26-cv-00170-TMC, 2026 WL 445562, at *3 (W.D. Wash. Feb. 17, 2026) (holding that "given that Petitioner refuses to be removed to Mexico and has declined to sign the Notice of Removal to Mexico . . . Respondents' representations are not persuasive enough to rebut Petitioner's showing that his detention has become indefinite") (internal citation omitted); *Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-cv-04371-DAD-JDP, 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026) (holding the Government failed to rebut Petitioner's showing where it argued only that removal is likely based on the "standing agreement" with Mexico, especially given that "the standing agreement …appears to be contingent upon the non-citizens consent to be removed to Mexico").

As Respondents have presented no other arguments to rebut Petitioner's showing, the Court concludes that Petitioner's removal is not reasonably foreseeable and he is entitled to relief.

////

////

////

////

////

4

## CONCLUSION

IT IS HEREBY ORDERED that:

1. The Amended Petition for Writ of Habeas Corpus (ECF No. 9) is GRANTED.

2. Respondents are ordered to immediately release Eduardo Yoel Nunez Sanchez from their custody, under reasonable terms of supervision pursuant to 8 C.F.R. § 241.5. [1]

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner without a change in circumstances to warrant Petitioner's re-detention.

4. The Clerk is directed to serve Central Valley Annex Detention with a copy of this Order.

5. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.  This Order resolves all pending motions.

IT IS SO ORDERED.

Dated:   **August 2, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC-10-NunezSanchez26cv04368.merits

---

[1] Petitioner requests safeguards around a potential third-country removal.  (Suppl. Br. 8.)  As the Court is ordering release, it finds that the process due in a potential third-country removal is not within the scope of the present case.  The Court notes that it would likely not view any subsequent petition on this issue to be second or successive.

5